IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Steven Blair Camden, | ) | Case No. 8:15-cv-00595-JMC-JDA |
| | ) | |
| Plaintiff,[1] | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| The County of Greenville; Dept. of Public | ) | |
| Safety for Greenville County[2]; Scotty | ) | |
| Bodiford; Tracy Krein; Lisa McCombs; Kim | ) | |
| Olszewski; Marie Livingston, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a motion for summary judgment filed by

Defendants. [Doc. 28.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local

Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial

matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations

to the District Court.

This action was filed on January 19, 2015,[3] alleging violations of Plaintiff's

constitutional rights pursuant to 42 U.S.C. § 1983. [Doc. 1.] Defendants filed a motion for

---

[1]The Complaint was filed by six plaintiffs. [Doc. 1 at 2–3.] However, on February 12, 2015, the undersigned directed the Clerk of Court to open and assign separate individual civil action numbers to each of the detainees whose names appeared in the caption of the Complaint. [Doc. 8.]

[2]On March 4, 2015, the undersigned recommended that Defendant Dept. of Public Safety for Greenville County be dismissed from this action without prejudice and without issuance and service of process. [Doc. 14.]

[3]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing ate in the light most favorable to Plaintiff, this action was filed on January 19, 2015. [Doc. 1-1 (Complaint signature page dated January 19, 2015).]

summary judgment on July 23, 2015.  [Doc. 28.]  On July 24, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised to respond to the motion and of the possible consequences if he failed to adequately respond.  [Doc. 29.]  Plaintiff filed a response in opposition to the motion on September 14, 2015 [Doc. 35], and Defendants filed a reply on September 23, 2015 [Doc. 39].  Accordingly, the motion is ripe for review.

## BACKGROUND[4]

Plaintiff, who is a pretrial detainee at the Greenville County Detention Center ("GCDC"), alleges that the GCDC's showers are contaminated and infested with gnats, worms, and bacteria and that, as a result of using these showers, Plaintiff has suffered skin infections and ringworm-like lesions.  [Doc. 1 at 6 ¶ a.]  The six original plaintiffs contacted Defendant Scotty Bodiford ("Bodiford"), the jail administrator, and Defendant Tracy Krein ("Krein"), the medical administrator, about the health and safety risks on October 19, 2014, but neither administrator responded.  [*Id.*]  Plaintiff alleges that three other original plaintiffs filed a grievance regarding the infestations of bugs and vermin throughout the housing units, but no one responded to that grievance.  [*Id.* at 6 ¶ b.]  The six original plaintiffs began filing grievances and appeals regarding the poor jail conditions and incomprehensive medical and mental health care, and each grievance and appeal was answered by the same persons; Plaintiff contends the grievance system and policy is systematically flawed and improper because the jail administrator responds that it is not a grievable issue.  [*Id.*

---

[4]The facts included in this Background section are taken directly from Plaintiff's Complaint.  However, the only allegations contained in this section are the allegations related to Plaintiff in this action and not to allegations related solely to any of the other five original plaintiffs.

at 6 ¶ c.] Plaintiff further alleges that he was charged $2.50 for depositing funds into his inmate trust account on July 30, 2014 and each time thereafter when funds were deposited; Plaintiff contends this charge is illegal under federal trust laws. [*Id.* at 7 ¶ d.] Plaintiff filed a grievance with respect to this allegation but the grievance was returned without a response. [*Id.*] Plaintiff alleges he requested mental health services as early as July 30, 2014, but Defendant Marie Livingston ("Livingston"), the mental health supervisor, insisted that "one (1) psychiatric spread over approximately 1550 inmates causes back log on seeing or receiving help" and informed Plaintiff of a three- to six-month waiting list to see mental health or receive services. [*Id.* at 7 ¶ e.] Plaintiff has requested emergency medical treatment and has been denied such treatment, resulting in pain, aggravation, and worsened medical conditions; Plaintiff suffered small strokes as a result. [*Id.* at 7 ¶ F.] When contacted, Krein and Defendants Kim Olszewski and Lisa McCombs each denied knowledge. [*Id.*] Plaintiff seeks punitive and compensatory damages and any other relief the Court deems appropriate. [*Id.* at 9.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe her pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d

3

1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## Requirements for a Cause of Action Under § 1983

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

4

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

5

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at

6

252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### Defendant the County of Greenville

As an initial matter, as argued by Defendants, Plaintiff has failed to present evidence to establish municipal liability against the County of Greenville. Municipalities and other local governmental bodies are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978). A local government may not, however, be held liable under § 1983 solely because it employs the tort-feasor. *Id.* A plaintiff must identify a local government "policy" or "custom" that caused his injury. *Id.* at 694; *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 402 (1997). To determine the liability of a municipality,

7

a plaintiff must "(1) identify[ ] the specific policy or custom; (2) fairly attribute[ ] the policy and fault for its creation to the municipality; and (3) find[ ] the necessary affirmative link between identified policy or custom and specific violation." *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987) (internal quotation marks omitted). Here, Plaintiff has failed to identify a specific policy or custom attributable to the County of Greenville in relation to his claims of constitutional violations. Thus, Plaintiff has also failed to allege facts establishing the necessary affirmative link between the policy or custom and the violation of Plaintiff's rights. Accordingly, Defendant the County of Greenville should be dismissed from this action.

**Conditions of Confinement Claim**

Plaintiff complains about the conditions of his confinement at GCDC, alleging he was subjected to contaminated showers that were infested with gnats, worms, and bacteria. [Doc. 1 at 6 ¶ a.] Defendants contend the conditions Plaintiff describes do not shock the contemporary conscience and there is no evidence of deliberate indifference. [Doc. 28-1 at 8.] The Court agrees Defendants are entitled to summary judgment with respect to the conditions of his confinement.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment,"

8

a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)).  Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless.  *Bell*, 441 U.S. at 539.

In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870.  Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment.  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  To determine whether a prison official has violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components).  "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).  However, not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense.  *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)).  "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause,

9

whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)).

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county detention center, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal. *See, e.g.*, *Bell*, 441 U.S. at 537 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel."). Further, Bodiford has averred that the showers and other surfaces are cleaned regularly with a quaternary disinfecting cleaning solution and the showers are inspected by the jail's Command Staff each week. [Doc. 28-2 ¶ 5.] Additionally, GCDC has a contract with a third-party exterminator that regularly treats the jail and is available for spot treatments when specific issues arise. [*Id.*] Moreover, Plaintiff has failed to satisfy the subjective component. Plaintiff has failed to present any evidence to raise a material issue of fact regarding whether Defendants actually knew the showers were contaminated and/or

infested.[5]  Although the Court must liberally construe the pro se Complaint, Plaintiff must do more than make mere conclusory statements to state a claim.  *See Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994).  Consequently, Defendants' motion for summary judgment should be granted as to Plaintiff's conditions of confinement claim.

**Deliberate Indifference to Medical Needs Claims**

Plaintiff claims he requested mental health services but was informed there was a three- to six-month waiting list.  [Doc. 1 at 7 ¶ e.]  Plaintiff further contends that he requested and was denied emergency medical treatment.  [*Id.* at 7 ¶ F.] Defendants argue Plaintiff has failed to establish his claim because he has failed to show he had a serious medical need or that Defendants exhibited deliberate indifference to that need.  [Doc. 28-1 at 11–15.]  The Court agrees Defendants are entitled to summary judgment with respect to the deliberate indifference to medical needs claims.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'"  *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)).  Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard.

---

[5]Although Plaintiff states in his response in opposition that he has notarized affidavits from several individuals attesting to his allegations [Doc. 35 at 1–2], the record before the Court does not include any affidavits.

A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)).   Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights.   *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one[6] and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials.   *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)).   As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.   "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted).   Further, in the context of prisoner medical care, the Constitution requires only

---

[6]"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F.Supp. 435, 454 (N.D. Ind. 1981)).

that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, with respect to his allegations regarding mental health services, the Complaint alleges only that Plaintiff was informed there was a three- to six-month wait for mental health services; the Complaint does not allege the Plaintiff was completely denied these services. [Doc. 1 at 7 ¶ e.] Further, Livingston has averred that she referred Plaintiff to Dr. Ernest Martin ("Dr. Martin"), GCDC's psychiatrist, who saw Plaintiff on August 7, 2014. [Doc. 28-3 ¶ 5.] Additionally, Defendants have provided mental health records that indicate Plaintiff was seen for a mental health assessment on July 30, 2014, and was referred to Dr. Martin. [*Id.* at 4–5; *see also id.* at 6 (psychiatric referral form).] Dr. Martin evaluated Plaintiff on August 7, 2014 and prescribed medications [*id.* at 7]; a counselor met with Plaintiff on September 26, 2014, Plaintiff requested to speak to Dr. Martin, and the counselor referred Plaintiff to Dr. Martin [*id.* at 8–9]; Dr. Martin saw Plaintiff again on October 9, 2014 and prescribed medications [*id.* at 10]; and a counselor met with Plaintiff

on December 10, 2014 and February 18, 2015[7] [*id.* at 14–15]. The records also indicate that GCDC staff contacted Dr. Martin when Plaintiff had questions about his medications. [*Id.* at 11–13.] This evidence establishes that Plaintiff was seen by mental health services numerous times and given different medications; therefore, the record does not support Plaintiff's assertion that he has not been seen by mental health services. To the extent Plaintiff is disappointed with the treatment he has received, such disappointment does not translate to deliberate indifference. As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice. *See, e.g., Jackson*, 846 F.2d at 817. Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants acted with deliberate indifference with respect to Plaintiff's allegations about mental health services.

With respect to the allegations that Plaintiff was denied emergency medical treatment, the Complaint fails to allege what medical condition was not treated. [Doc. 1 at 7 ¶ F.] Accordingly, Plaintiff has failed to allege that he had a serious medical need to which Defendants were deliberately indifference.[8] Moreover, even if he had properly

---

[7]The notes from the February 18, 2015 meeting indicate Plaintiff was on the list to see Dr. Martin again. [Doc. 28-3 at 15.]

[8]In his response in opposition to the motion for summary judgment, Plaintiff states, "Defendants continue to deny plaintiff access to cardiologist for on going chest pains caused by defective 'cardio pace maker'"; however, new matters cannot be raised in a response in opposition to a motion for summary judgment, *see Temple v. Oconee County*, C/A No. 6:13–144–JFA–KFM, 2014 WL 4417702, at *13 (D.S.C. Sept.8, 2014) (citing *White v. Roche Biomedical Labs.*, 807 F.Supp. 1212, 1216 (D.S.C. 1992)). Moreover, even if the Court were to consider this statement as properly identifying Plaintiff's medical condition, as discussed, Plaintiff has provided nothing more than conclusory allegations regarding this medical condition and the alleged denial of treatment.

alleged a claim for deliberate indifference to medical needs, he has failed to present any evidence that he had a serious medical condition or that Defendants denied him medical treatment.   Thus, Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants acted with deliberate indifference to any medical need, and Defendants' motion for summary judgment should be granted with respect to this claim.

**Canteen Charges Claim**

Plaintiff alleges he was charged $2.50 for depositing funds into his inmate trust account on July 30, 2014 and each time thereafter that funds were deposited in his account; he alleges this is illegal under federal trust laws.  [Doc. 1 at 7 ¶ d.]  Defendants argue Plaintiff had no property interest in the money that was paid for the processing fee. [Doc. 28-1 at 17.]  The Court agrees Defendants are entitled to summary judgment with respect to the canteen charges claim.

Bodiford has averred that the $2.50 charge is not a charge to Plaintiff's canteen account; instead, it is a processing fee charged by the third-party company that processes deposits made by family and friends at the ATM in GCDC's front lobby.  [Doc. 28-2 ¶ 6.] The fee is charged to the person making the deposit, not the inmate, and GCDC does not receive any portion of the processing fee.  [*Id.*]  Plaintiff has failed to address this claim in his response in opposition to the motion for summary judgment.  Further, Plaintiff has failed to establish he had any property interest in the $2.50 charged in that it is charged to the person making the deposit, and Plaintiff has failed to establish that Defendants received any portion of the processing fee such that they are the proper defendant for this claim.

15

Accordingly, Defendants' motion for summary judgment should be granted with respect to the canteen charges claim.

**Grievance System Claim**

With respect to Plaintiff's claim that the grievance system is systematically flawed and improper [Doc. 1 at 6 ¶ c], as argued by Defendants, the law is well settled that there is no constitutional right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams*, 40 F.3d at 75 (dismissing the plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983); *Doans v. Rice*, 831 F.2d 1057 (4th Cir. 1987) (unpublished table decision) (noting inmate grievance procedures are not constitutionally required). Accordingly, Defendants' motion for summary judgment should be granted with respect to Plaintiff's claim regarding the grievance procedure.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 28-1 at 19–21.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who

16

violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis.

17

*See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

January 19, 2016
Greenville, South Carolina